# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MAURICIO DYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. 3:10-0129 |
| | ) JUDGE TRAUGER/KNOWLES |
| MONTGOMERY COUNTY JAIL, | ) |
| NORMAN LEWIS, and DOUG | ) |
| TACKETT, a/k/a, f/n/u Thackett, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

On March 2, 2011, the undersigned submitted a Report and Recommendation (Docket No. 37), which recommended that a Motion for Summary Judgment filed by Defendants Sheriff Norman Lewis and Captain Doug Tackett (Docket No. 24) be granted. The undersigned further noted that Plaintiff's Complaint failed to state a claim against Montgomery County or the Montgomery County Jail, and the undersigned recommended that this action be dismissed in its entirety. The undersigned further noted that Plaintiff had failed to respond to the Motion for Summary Judgment or to Defendants' Statement of Undisputed Material Facts.

Later that same day, Plaintiff filed a document headed "In Response to Summary Judgement" (Docket No. 39) and a document headed "Statement of Undisputed Material Facts Response" (Docket No. 40).

On March 4, 2011, Judge Trauger entered an Order noting that the undersigned's Report and Recommendation was submitted "without the benefit of the plaintiff's response." Docket

No. 41. Judge Trauger's Order stated in part, "In the interest of having this case decided on its merits, this case is REMANDED to Magistrate Judge Knowles so that he may reconsider the dispositive motion and the plaintiff's responsive documents." *Id*.

Plaintiff's Response to the Summary Judgment Motion is a one-page document, which states in relevant part as follows:

> 1) I know that the Defendants knew that they were acting in a unconstitutional conduct. I wrote each official numerous times. Not only through grievances, but also through their mail inbox.
>
> 2) I Mauricio Dyer am not proceedings in their individual capacity only. I am stating that this facility performed in bad conduct and that the officials allowed it to happen, as well as the officials also took part in it.

Docket No. 39.

In his Response to Defendants' Statement of Undisputed Material Facts, Plaintiff specifically addressed 12 of the 24 undisputed facts that Defendants had submitted. Docket No. 40. The Undisputed Facts submitted by Defendants and Plaintiff's responses thereto are as follows:

> 5. When he was originally booked into the Montgomery County Jail, Mr. Dyer was classified as a high risk prisoner because of the serious nature of the charges against him. (Tackett Aff. at ¶ 4).
>
> **RESPONSE:** Mr. Dyer was charged with Attempted Homicide and Aggravated Assault. He was in trial for two days, and the deliberation took less then Thirty minutes. He was found innocent of Attempted 2nd Degree Murder, and had a mistrial on the Aggravated Assault.
>
> 9. It is the policy of the Montgomery County Jail that inmates who are housed in the maximum-risk pods based on their classification are locked down at all times. Inmates housed in maximum-risk pods receive one (1) hour per day out of the cell for recreation. (Tackett Aff. at ¶ 7).

**RESPONSE:** Mauricio Dyer (The Plaintiff) was held multiple times in the Maximum risk pod with out a Mandatory one hour recreation.

10. The staff at the Montgomery County Jail takes all reasonable steps to keep inmates safe by segregating inmates who are known to have problems with each other. (Tackett Aff. at ¶ 10).

**RESPONSE:** The Montgomery County jail has set inmates with known problems in the same area.

12. Doug Tackett was not aware of an issue between Inmate Dyer and any other inmate. (Tackett Aff. at ¶ 9).

**RESPONSE:** Cpt. Tackett was aware of the Plaintiff, Mr. Dyer issues relating to other inmates. The Plaintiff wrote Cpt. Tackett through grievances and through the USPS postal services numerous times.

13. Norman Lewis was not aware of an issues relating to Inmate Dyer's incarceration. (Lewis Aff. at ¶ 2).

**RESPONSE:** Norman Lewis was aware of the Plaintiff, Mr. Dyer issues relating to other inmates. The Plaintiff wrote Cpt. Tackett [*sic*] through grievances and through the USPS postal services numerous times.

14. Mauricio Dyer never complained to anyone at the Jail that he feared for his safety due to a problem with a specific inmate. (Dyer Depo., p. 86, 1.5 - 8).

**RESPONSE:** Mauricio Dyer did complain on several occasions about safety.

15. Fights in correctional institutions arise out of things such as disagreements about debt, drugs, or racial motivation. (Tackett Aff. at ¶ 8).

**RESPONSE:** The Plaintiff Does not nor never have done drugs. The two separate occasions that the Plaintiff had documented fights were both with a inmate of the same racial background. Also, The plaintiff never owed and debt while incarcerated in Montgomery County Jail. These accusations are merely assumptions.

3

17. At no time was Mr. Dyer, or any other inmate, denied toilet tissue or other hygiene products. (Tackett Aff. at ¶ 11).

**RESPONSE:** Mauricio Dyer was harassed and chastised about tissue paper and hygiene. The Plaintiff was even told about his financial state and what he should and should not buy with his money. Also, the plaintiff have grievances with a timeline that will prove how long it took Montgomery to answer or abide.

18. Inmates are issued toilet paper upon being incarcerated. Inmates are issued a partial roll upon entry and then whole rolls twice per week. If an inmate run out of tissue before regularly scheduled times they can notify any Officer to get them some more. Otherwise, toilet tissue re-issue is performed twice per week. (Tackett Aff. at ¶ 12).

**RESPONSE:** Mr. Dyer was issued a partial role of tissue when he entered the facility, but that roll was previously use. Also this facility denies toilet tissue to anyone that has money on their books. If a inmate ran out of tissue, they had to plead with the guards for a unbearable amount of time.

21. Pursuant to the Jail's policy on Sick Call Requests, any inmate in the facility who requests a sick call slip will be given that slip in a timely manner. (Tackett Aff. at ¶ 15).

**RESPONSE:** Sick-call are given to inmates in a timely manner, but there is not a private/secure area for the sick call slip once they are turned in. Officers are not authorized to read inmates medical problems/history.

23. The staff of the Montgomery County Jail will occasionally conduct a search of an inmate cell and seize illegal contraband or other items. The objective of the search is to locate contraband and rid the Jail of it. Searches are conducted as a direct result of the need to maintain the safety and security of the facility for Jail staff and inmates. (Tackett Aff. at ¶ 17).

**RESPONSE:** Officers occasionally conduct searches that entail taking inmates rightful property at the officers leisure.

24. The Plaintiff's lawsuit is based upon the fact that Sheriff Lewis and Captain Tackett are individually liable to the extent that they responsible for running the Jail and the Sheriff's Office.

> (Dyer Depo. [Docket No. 27-1], p. 32, 1.17 - 24; p. 41, 1.21 - p. 42, 1.4).
>
> **RESPONSE:** Mr. Dyer lawsuit is not based solely on Cpt. Tackett, and Sheriff Armstrong [*sic*] being responsible for what happens in this facility. It is based on their individual responses to Mr. Dyer. Mr. Dyer was treated unfair by these individual directly.

Docket Nos. 26, 40.

Each of the foregoing Statements of Undisputed Material Facts submitted by Defendant is cited to the Affidavit of Doug Tackett, the Affidavit of Norman Lewis, or the Deposition of Plaintiff. Plaintiff's responses set forth above, however, are not cited to any part of the record, they are not sworn to, and they are not in a form required by Fed. R. Civ. P. 56.

The Court notes that Plaintiff did not respond to a number of the undisputed facts submitted by Defendants, the most significant of which are as follows:

> 11. The staff complied with all applicable standards and practices with regard to Mauricio Dyer. (Tackett Aff. at ¶ 10).
>
> 19. The meals provided to inmates at the Montgomery County Jail meet the guidelines of the American Correctional Association which are based upon the current recommended daily allowances for males and females 19 to 50 years of age as established by the Food and Nutrition Board of the Institute of Medicine. Meals average 2900 calories per day. All menus utilized in the Jail are proposed, reviewed and implemented by a registered dietician. (Tackett Aff. at ¶ 13).
>
> 20. The Montgomery County Jail is not a health care provider. The Jail contracts with Correct Care Solutions for the provision of medical care to inmates. The Jail has 24 hour nursing staff, 7 days a week, 365 days a year. (Tackett Aff. at ¶ 14).

Docket Nos. 26, 40.

The two argumentative statements made in Plaintiff's Response to the Summary

Judgment Motion do not raise any issues that necessitate a reconsideration of the undersigned's previously-submitted Report & Recommendation.

Likewise, Plaintiff's responses to the Statement of Material Facts do not justify a reconsideration of the prior Report & Recommendation for at least three reasons. First, the Responses are not in a form required by Rule 56, and they do not comply with Local Rule 56(c).[1] For those reasons alone, the Court should not consider them.

Second, many of the statements and Plaintiff's Responses thereto simply are not material to any of the issues raised in the instant Motion or addressed in the previous Report & Recommendation. *See, e.g.* response Nos. 5 and 9. Additionally, Plaintiff's responses to certain statements of material fact make broad statements that, by their terms, either do not reference Plaintiff or do not show any specific injury or damage to Plaintiff. For example, Plaintiff's Response to Undisputed Fact No. 10 states, "The Montgomery County jail has set inmates with known problems in the same area." In Response to Undisputed Fact No. 14, Plaintiff states, "Mauricio Dyer did complain on several occasions about safety." Plaintiff's response to Undisputed Fact No. 23 states, "Officers occasionally conduct searches that entail taking inmates rightful property at the Officer's leisure."

Third, none of Plaintiff's Responses to the Statements of Material Facts rises to the level of showing that Defendants Lewis and Tackett committed any acts or omissions that violated Plaintiff's rights under federal law.

As the undersigned stated in the previous Report and Recommendation:

---

[1] Local Rule 56(c) provides in relevant part, "Each disputed fact must be supported by specific citation to the record."

> Plaintiff's Complaint simply contains a list of general allegations
> that are completely void of any specificity. Plaintiff does not
> mention who allegedly did what to whom, nor is it even clear that
> Plaintiff was the victim of any alleged violations. Other than
> naming Sheriff Lewis and Cpt. Tackett as Defendants, Plaintiff
> does not mention them at all, much less proffer any allegations
> against them. Without factual allegations showing that Defendants
> Lewis and Tackett engaged in conduct volatile of his constitutional
> or federally-protected rights, Plaintiff cannot sustain a claim
> against them.

Docket No. 37, p. 8.

For the foregoing reasons, and for the reasons set forth in the previous Report & Recommendation, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 24) be GRANTED and that this action be DISMISSED WITH PREJUDICE as to Defendants and as to Montgomery County or the Montgomery County Jail.

The Court further notes that, in his Response to the Summary Judgment Motion, Plaintiff states as follows:

> It would be a blessing to have a extended amount of time
> [presumably to file another response to the summary judgment
> motion].
>
> . . .
>
> 4. I the planiff would be pleased to receive a extended time-frame
> to be allowed for me to respond to the Defendants text.
>
> 5. I the plaintiff would be pleased to receive instructions of what I
> am ask to turn in therefore I can do my best to respond in a timely
> manner.

Docket No. 39.

The instant Motion for Summary Judgment was filed November 29, 2010. On January 24, 2011, Plaintiff sent an untitled document to the Court stating in part, "I would like to have extensions of all forms sent to me." Docket No. 33. The undersigned construed that document

as a Motion for an Extension of Time to respond to the instant Motion for Summary Judgment, and allowed Plaintiff additional time to and including February 28, 2011, in which to respond. Plaintiff's Response, however, was filed 2 days after that deadline.

Fed. R. Civ. P. 56(d) provides a procedure for a non-movant opposing a Motion for Summary Judgment to obtain additional time in which to obtain facts to respond to such a Motion. In order to take advantage of that procedure, however, a plaintiff must "indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (citation omitted).[2] Plaintiff has not cited or complied with the provisions of Rule 56(d), or with the procedures set forth in *Cacevic*, and he has already had more than 3 months to respond to the instant Motion. Plaintiff's requests for additional time to respond to the instant Motion are without merit.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

---

[2] The *Cacevic* Opinion discusses "Rule 56(f)." That provision of Rule 56 was transferred to Rule 56(d) by the 2010 Amendments to the Federal Rules of Civil Procedure.

_____
E. Clifton Knowles
United States Magistrate Judge